Filed 7/30/14  Bechtold v. Gillespie CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RAYMOND BECHTOLD,<br><br>    Plaintiff, Cross-defendant, and Respondent,<br><br>v.<br><br>PAUL D. GILLESPIE,<br><br>    Defendant, Cross-complainant and Appellant;<br><br>VIKING AUTOMATION TOOLS, LLC,<br>    Cross-defendant and Respondent | H037038<br>(Santa Clara County<br>Super. Ct. No. 1-08-CV119735) |

This case involved the business relationships and dealings between plaintiff Raymond Bechtold (Bechtold) and defendants Paul D. Gillespie (Gillespie) and American Tech Manufacturing, Inc. (ATM), Dymatix, Inc. (Dymatix), SESA, Inc.[1] (SESA), Fastspares, Inc. (Fastspares) and SESA Group, Inc. (SESA Group).  At the time of trial, Gillespie was the sole director and shareholder of ATM, Dymatix, SESA, and SESA Group.  The evidence suggested that Gillespie ran all the corporate entities.

---

[1]	SESA, Inc. is an acronym for Semiconductor Equipment Sales Associates, Inc.

1

Following a court trial, the trial court entered judgment in favor of plaintiff Bechtold and cross-defendants Bechtold and Viking Automation Tools, LLC (Viking), which the cross-complaint alleged had been established by Bechtold to compete with Dymatix.  The judgment provided that cross-complainants Gillespie and Dymatix took nothing by way of their cross-complaint.

The judgment entered included a $25,000 award in favor of Bechtold and against all defendants for the Trigon collateral that had not been turned over to Bechtold.[2]  It awarded $75,759 to Bechtold for ATM's breach of its employment agreement with him.  The judgment declared that Bechtold is, and at all times since June 30, 2008 has been, the owner of the Trigon collateral and Bechtold is, and at all times since July 23, 2008 has been, the owner of the Giga-tronics collateral, which the evidence at trial showed had been sold to Bechtold in a private foreclosure sale.  The judgment specified the items constituting the Giga-tronics collateral.

The judgment declared that defendants had neither "equity in, nor right to possess," any of the Giga-tronics collateral.  It ordered all defendants (and "their agents, servants, . . . employees, and all persons acting under, in concert with, or for them") to "forthwith do all things reasonable and necessary to deliver and turn-over to Raymond Bechtold possession of any and all Giga-tronics' collateral . . ." and permanently enjoined them "from possessing, using, or profiting from any of the Giga-tronics' Collateral (unless it is with the written consent of Bechtold or his successors in interest)."

The judgment further ordered defendants (and "their agents, servants, . . . employees, and all persons acting under, in concert with, or for them") to "immediately cease publication of any and all advertising . . . regarding . . . any of the Giga-tronics

---

[2]     At the commencement of trial, the parties stipulated that Bechtold was entitled to possession of the Trigon collateral and, accordingly, the only issue for the trial court to decide was the amount of damages for the missing items of collateral.

collateral, and in particular stating or implying that Dymatix, Ultracision and/or Viking products or services, or products derived therefrom [*sic*], are available for purchase or service through any of the defendants." It ordered defendant to take down specified Internet domain websites and any of their other Internet domain websites referencing those products or services by name, abbreviation, or acronym. It also ordered Dymatix to change its name to a new name not using "the words Dymatix, Viking, and/or Ultracision" or any abbreviation or acronym of those words.

The defendants and cross-complainants filed a notice of appeal.

By separate order, this court dismissed the appeals of ATM, Dymatix, SESA, Fastspares, and SESA Group because the records of the California Secretary of State (SOS) indicated their powers, rights and privileges remained suspended.[3] Accordingly, the trial court's decisions regarding ATM's liability for Bechtold's unpaid wages and the ownership of Dymatix's former assets, the Giga-tronics collateral, stand unchallenged. Gillespie as an individual has no standing to independently challenge those determinations. At trial, he did not present evidence that he personally had any equitable or legal interest in the Giga-tronics collateral acquired by Bechtold from Giga-tronics.

The parties now concur that the insufficiency of the evidence issue concerning the $25,000 award for the unreturned Trigon collateral has been rendered moot by developments in the federal bankruptcy court. Accordingly, this court will dismiss the appeal as moot.

DISPOSITION

The appeal is dismissed.

---

[3]    Respondents asked this court to take judicial notice that business searches conducted on July 31, 2012, on the SOS's official Internet website reflected that ATM, Dymatix, SESA Group, and Fastspares had been suspended. We deny the request as moot.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.


*Bechtold v. Gillespie*

H037038